Please step up and identify yourself, please. Good morning, Your Honors. My name is Josh Friedman. I'm here today on behalf of the appellant, Sean Garrett. May I have? My name is Sam Shem on behalf of the people. All right. Each side will have 15 minutes. We'll give you a little longer if you need it. You're the only case we have today. So we want to save some time for rebuttal if you wish that too, Mr. Friedman. I would like five minutes for rebuttal if I may, Your Honor.  Thank you, Your Honor. Your Honor, if Marcel Hunt had not been killed on December 20, 2004, I would be here before you calling this case a comedy of errors. The case is not a comedy. It's a tragedy. It's an absolute tragedy for the family of Marcel Hunt and Mr. Hunt himself. He was killed on that day. But, Your Honors, I submit there's a second tragedy. The tragedy is Sean Garrett was convicted of first-degree murder under the felony murder statute and sentenced to 36 years in prison. However, the tragedy is the State failed to prove beyond reasonable doubt either that there was an underlying felony that resulted in the death of Mr. Hunt committed by Sean Garrett or his co-defendants, or that there was a murder of Mr. Hunt committed by Sean Garrett or his defendants. In fact, I think a fair reading of the record shows that there is no evidence whatsoever establishing that Mr. Garrett is guilty of first-degree murder. I'd like to briefly review the salient facts if I may. About all we know for certain in this case is Marcel Hunt was killed. What we don't know is critically who killed him. There was no evidence adduced at trial, even including the confession by Mr. Garrett, which we submit was coerced. But even assuming that it wasn't, there is no evidence that any of Mr. Garrett's co-defendants or Mr. Garrett killed Mr. Hunt. Briefly, Officer Jackson, the Chicago police officer who allegedly found a weapon outside the store, the Family Dollar store where the murder was, in the vicinity of one of Mr. Garrett's co-defendants, testified at trial that when he inventoried the weapon, he carefully placed his marks on the weapon. At trial, those marks were not there. So there's the first absolute failure of proof. There was no weapon. Second failure of proof was that when the state then offered their expert forensic examiner, he could not link the fired bullet that was found in Mr. Hunt's body to the phantom gun. We have two failures. Don't have a gun. We don't have a bullet. The state had no physical evidence linking Mr. Garrett or any of his defendants to the shooting of Mr. Hunt. There's also no testimonial evidence linking Mr. Garrett or any of his defendants to the crime. Officer Rogers, who was the first responder at the scene, did not hear a shot fired in the store. Officer Rogers, again, the first responder, never saw anyone in the store with a gun. No witness came forth to testify that there was a shot fired at the Family Dollar Store. So, Your Honors, appellants admits we don't have physical evidence, we don't have testimonial evidence, we don't have confession, we don't have documentary evidence that any of the defendants, either Mr. Garrett or his co-defendants, shot and killed Marcel Hunt. In fact, Your Honors, there's not even evidence of a robbery. No evidence was offered at trial that a single penny was taken from the Family Dollar Store. Well, they weren't charged with the substantive offense. It was an attempt, correct? Charged with the inchoate offense, and all they had to show was an intent and a substantial step in furtherance of the substantive crime. I would submit, Your Honor, there was not even a substantial step taken. There was no evidence that any of the individuals used the force or threat of force at anyone at the store. Officer Otto... How were they going to get the money? Pardon me, Your Honor? How were they going to get the money? Persuade them? I have no idea, but there was no evidence that they did anything. Officer Rogers, excuse me, Officer Otto, who responded, said he saw the store manager standing outside the store. He spoke to him. The store manager did not say that anyone attempted to commit a robbery, that anyone showed weapons, that anyone used or threatened force. He was not called as a witness at trial. Here's the perfect person. He could have said, yeah, they came in guns ablaze or guns threatening. There was none of that. There was all we have is a dead body and a man outside the store who allegedly had a gun, a gun that didn't exist. Counsel, would you... Pardon me, Judge. Go ahead. Would you agree that in the videotaped statement of Mr. Garrett, that he did lay out pretty elaborately a kind of criminal design that they had cooked up over a period of some time in a number of meetings the way that they were going to, you know, rob this place? I will agree to that, Your Honor. There's no question about that. The question, though, is under the felony murder statute, what we have here is a combination. As I understand it, felony murder and accountability. Felony murder statute clearly states that there must be a link between the underlying felony and the murder. I cite 720 ILCS 5-9-1A3. A person commits first-degree murder if, in performing the acts which caused the death, is attempting to commit a forcible felony. In this case, so there must be causation. Mr. Garrett obviously did not perform the acts which caused the death. He was not at the scene. In fact, if you look carefully at the confession and all the witness testimony, there was never one mention of a gun. Mr. Garrett did not agree to a gun. He didn't know a gun was going to be used. There was no evidence that he agreed to a criminal scheme whereby an individual would result in being shot. So without Mr. Garrett being the cause, he would have to be accountable. But you're leaving out the language that's inserted when we're talking about accountability. And what the instruction calls for is that the defendant or one for whose conduct he is legally responsible. Obviously, that was the theory that the state followed here. But go back to the attempt armed robbery for a minute, because I realize that there was not a verdict form for that. And I don't know whether that was a count originally that was nollied by the state. Traditionally, they do have a count for the underlying felony. But it seems to me with the line of cases that I'm familiar with going way back, you don't even have to have the offenders entering the premises to be guilty of attempt armed robbery. There's the Terrell case, for instance, where the police receive a call from an anonymous person that there's two armed men hiding behind a gas station. And they go there and they find these guys who are armed. They are running from the scene. Their explanations don't make sense. One fellow says, I was there to buy some cigarettes. He has no money. They're convicted of attempt armed robbery. They never even enter the premises. There's many cases like that where as long as there's a fine line between preparation and an act in furtherance of the particular offense. And certainly if you can convict people for not going in the premises who have crossed the line from preparation to a substantial step, I think a lot can be said about all of these individuals being guilty of attempt armed robbery. That's a separate issue from the murder, obviously. Your Honor, I'm not familiar with the Terrell case. In the Terrell case, I do apologize. From my understanding as you laid out the facts, I would say the distinguishing factor is there at least appears to be proof that both individuals had a gun. You don't need a gun. You don't need a gun. Under the Terry rule, the common design rule, you set out to do an illegal act. You set out with others in a common design to accomplish a person. You are, as the state's attorneys often argue, you're in for the penny. You're in for the pound. Your Honor, I would submit that would be the case that Mr. Garrett planned. They knew the defendants were going to carry a weapon. The mens rea of this case, at best for the state, is that Mr. Garrett had agreed to do a robbery. He had not agreed to do an armed robbery. I would submit, Your Honor, take the hypothetical where you and I, you asked me to help you commit a shoplifting. You saw a pack of gum in the front of a store. You said, hey, this store is empty. Why don't you drive me there, and I'm going to grab that pack of gum. I drive you there, and you blow away the cash register. You blow away the clerk with a .35, .38 caliber gun. I never discussed that with you. My mens rea did not reach to that level. What I agreed to do. You don't need to. You're barking up a tree that you're not going to be able to reach here. Well, if I may, Your Honor, the statute on accountability states. You're stronger on the murder than you are on the armed robbery. Believe me. As I understand the accountability statute, and I'll quote it, Your Honors, either before or during the commission of an offense, with the attempt to promote or facilitate that commission, he or she solicits, aids, vets, agrees, or attempts to aid that person in their planning or commission of the offense. As I understand that means you have to agree to that specific offense. Your mens rea has to reach that far. The case law says an offense, an offense, and the instruction was modified over the years. As I understand the case law, Your Honor, for example, the Fagan case. This judge, I can't remember if it's Posner or not, but the case turned out, and he is interpreting Illinois law. I understand it's not binding on this court. Accountability requires proof that the defendant shared with the person who actually committed the crime an accountable or common design. There was no evidence presented that the defendant shared a common design with whoever shot the victim. I would submit we have the same issue here. There's no evidence presented that Sean Garrett shared his design with whoever shot the victim. We don't know who shot the victim. In Fagan, the court ruled that that's enough to excuse the defendant. Let's assume for the sake of argument that one of his co-defendants has proven to have shot. He did not share that common design to commit that specific offense, which is murder, yet he's being held on first-degree murder. The only analogy in Fagan is that in Fagan, the Seventh Circuit was persuaded by the absence of any proof as to who did the shooting. It was a different weapon. A stranger, in effect, was the one who fired the fatal shot from the physical evidence that they had. And I suppose you can draw some analogy from that case here. But it's obviously on a theory of accountability. That's correct, Your Honor. And I think it's interesting, if you read the record, the jury at one point asked during deliberations, I believe it was, who killed Marcel Hunt. There was no proof that anyone killed him. And the prosecution argued, and I think incorrectly, it doesn't matter. Cases are clear that it does matter. Someone in that group has to have been proven to have killed Marcel Hunt. Why does it matter if it's A, B, or C? There are three young men in this court. Officer Rogers, I believe it was, stated there were other people in the store. It could have been someone else. Mr. Garrett cannot be liable for a person that he was not in a common design with. The State has not met its burden of proving beyond a reasonable doubt that it was one of these three. And it's just as probable that someone else, and I think Judge Posner hypothesizes exactly what's here, a third man could have been involved. Well, I suppose from the evidence you could rule out real because we know that he was seen with the weapon by Rogers when he was chasing him with a weapon. The police officer, the female, saw him with a weapon. And, of course, a weapon was recovered, even though that weapon did not come into evidence. He was in the store with a weapon. We don't know about the other two. We don't know who actually did the shooting, and you're entirely correct there. I would suggest, well, I guess in circumstantial, you could infer that Rio was in the store with a weapon, but Officer Rogers and the State has throughout their briefs said he was in the store with a gun, he was in the store with a gun. There was no evidence that he saw him in the store with a gun. Why do you say circumstantially? You have three people who identify him with a gun. You don't need the gun physically to prove that he had a gun. He was seen with a gun by three officers, and a gun was inventory. Now, something happened about that gun that came up without the initials in trial, but that's true. But you can't get around the fact that there's testimonial evidence that Rio had a gun, and he had a gun after he left the premises. At some portion of the time, yes, he did have a gun after he left the premises. I would say, though, their testimony is all impeached thoroughly by the inability of Officer Jackson to identify his gun, and then the fact that whether or not there was a gun, there was no evidence linking this phantom gun or any gun to the death of Marcel Hahn. Well, your strongest point for him is that even if he had that gun, that gun was not the murder weapon, right? That's correct. Let me ask you, because it's something that troubles me a little bit. You brought up the Fagan case, and in Fagan, Judge Posner, at page 1159, I believe, mentions that in that case, for whatever reason, the state prosecuted the defendant on a theory of accountability, and at the end of a long recitation of cases, he states, quote, but for reasons that have never been explained, he wasn't charged with felony murder. Is this case in a similar posture where Mr. Garrett was charged under an accountability theory as opposed to felony murder, or are they the same thing in your judgment? In terms of the law? Yes. Well, I think... What's the distinction that he's trying to make here, and is that something that you think is similarly situated in this case? I believe what he's trying to say, if you're part of a criminal enterprise, and that criminal enterprise, and it's proven that one of the individuals, not which one, but someone committed a murder, and you were part of that enterprise, then you're liable under felony murder. I don't believe we've gotten that far in this case, because there's no proof that anyone in Sean Garrett's alleged criminal enterprise pulled the trigger. Which was similar to Fagan, because, as Judge Tooman said, it appears to have been a stranger. Well, I... With the .38. I think it was, if it was a gang warfare that arose, it was a gang fight, and if another gang member shot back and killed this person, I believe that he could be liable under a felony murder. Well, maybe the distinction was there was no underlying felony in Fagan, and he was charged under intentional murder and accountability, but there was, you know, if there was an aggravated battery that they all agreed to embark upon, you had a gang fight going on, that it's very possible that the state's attorney did not feel felony murder would lie in that situation, and so they charged him with intentional murder and went on an accountability theory. And a common design theory. I think what Posner had said was common design embraces the killing of a victim by any member of the group, but not by a non-member. And that's the analogy that I think you draw here. That's what I'm trying to draw, Your Honors. I think there's numerous other cases. The Church-Chirillo case, and I apologize, I did not cite it in my initial brief. I think it was decided three days before I filed it. And that, again, was a case where there must be proof of a crime by the principal to hold the accomplice liable. That was a case where they tried to hold the defendant was found guilty of the offense of possession, possession of a weapon based on accountability. The defendant had been involved in the theft of a weapon with the co-defendant, and the state contender was a convicted felon. The state sought to hold the defendant guilty under accountability status based on the felon status of the co-defendant. However, there was a failure of proof on whether the co-defendant was a convicted felon. The court agreed with the defendant's argument that if you cannot find the principal responsible guilty, you cannot find the accessory or the accomplice. And I believe the accountability is just the codification of accomplice liability. That you must find the principal guilty before you can find the accomplice. And that case says, correct. There was no proof that the defendant was a convicted felon. So the, excuse me, the co-defendant was a convicted felon. The defendant could not be a convicted felon. Church-Arillo cites with approval People v. Griffin, which I cite in my brief, a First District case, which holds that for an order for a defendant to be held accountable, the state has to prove the offense was committed by the principal. And Church-Arillo cites a number of out-of-state cases on that principal as well. So we submit, Your Honor, and none of the defendant, none of the state's cases are to the contrary. They've only cited a few cases on accountability. All their cases establish that there was proof, absolute proof, either by admission or testimonial proof, that the principal was guilty of the underlying felony and that the accomplice was at the scene of the crime. The case they just submitted last week, I believe, the recent authority. All establish that there must be proof that the defendant committed the crime. Excuse me, that the principal committed the crime before the accomplice can be liable. In this case, Your Honor, we have no proof, certainly not enough proof to raise the level of beyond a reasonable doubt that any of Sean Garrett's co-defendants shot Marcel Hunt. I think we'd be in the kind of situation, if this court were to sustain the conviction, that we're allowing people to be convicted on possibilities and hypothetical issues. As the court says in People v. Smith, it is no help to speculate that the defendant may have killed the victim. No citizen would be safe from prosecution under this standard. And I submit, Your Honor, the best the state can say is that maybe Rio killed Marcel Hunt. I do not submit, I do not think that that is enough. That is not enough to hold Mr. Garrett guilty and put him in jail for 36 years because perhaps, maybe, Rio pulled the trigger that killed Marcel Hunt. I'll allow the state to do that. Before you sit down, let me just ask you something. I believe last summer you moved to supplement the record. There were some things that were missing, videotape and some other volumes. Did you intend to supplement the record with the videotapes of the four other defendants who pled guilty? No, Your Honor. Do you know how that got into the record? Certainly it was not part of the trial record. It must have been a mistake on my part. You don't know if they were in the record originally? I am not certain. My intent was that the videotape, Mr. Garrett's confession, was not included in the initial record. That was heard by the jury. The others were not. The others would have obviously no place before the jury in Mr. Garrett's trial. Right.  Thank you, Your Honor. Thank you. May it please the Court, my name is Sam Shem for the People. The best that we could say is not that Del Rio was the killer or may have been the killer. In fact, at trial, we disavowed that theory. During closing argument, the prosecutor argued that it was probably not Rio who shot the victim in this case. What is important in this case is that we as a prosecutor, in meeting our burden, proved that the defendant attached himself to a common design. In this case, the common design was to rob the family dollar store. And that was conclusively established, beyond the reasonable doubt established, by, among other things, the defendant's confession. And Your Honors have already viewed the videotape and considered the record in this case. In the confession, defendant unequivocally testifies or states to the prior planning of the robbery in this case. Through his girlfriend, Maria, who was an employee of that store, they had planned on a number of occasions, to be exact, six or seven times, they discussed this plan throughout the store. And that upon receiving a call from her on the day of the robbery, defendant drove the three teenage co-defendants over to the store and dropped them off. In order to prove or meet our burden in establishing the defendant was accountable for whatever happened inside that store, we had to prove that defendant took a substantial step toward the commission of that offense. What was the offense? According to the indictment, we pled that it was an attempt on robbery. But it need not be so, although the evidence establishes that the co-defendants did, in fact, commit the offense of attempt on robbery. But even if, according to the defendant's self-serving confession, that all he knew was that they were going to commit a robbery, that's enough. The fact that he received the call, decided to drive the three co-defendants in his maroon Chevy Lumina and drop them off, that is enough at that point for us to meet our burden in establishing the defendant was accountable. That constitutes a substantial step under the law that would render him guilty and accountable for whatever happened inside the store. Now, wait a minute. Wait a minute. You're going too far. I agree that from what you've said, that would certainly establish the offense of attempt on robbery. It doesn't have to know there's a gun. But we're talking about a common design theory. The jury was instructed on common design. And what they were told was it's not necessary to show that it was the intent, the original intent of the members to kill the deceased, that it's sufficient, the jury believed from the evidence, beyond a reasonable doubt, that the defendant or one for whose conduct he's legally responsible combined to do an unlawful act, any unlawful act, in this case, an armed robbery, and the deceased was killed by one of the parties committing that unlawful act. And that's the problem I'm having, that we're having, is was the deceased killed by one of the parties committing the armed robbery? And where is the proof of that? We believe there is evidence. What is it? Who did it? Who did it? Well, there's no testimonial evidence or direct eyewitness testimony that says. Well, what evidence is there? You said there's no testimonial evidence. What evidence is there? A, B, or C, one or the other, take your pick. It's one of the three. Well, is that enough to find somebody guilty of first-degree murder? It may be this one. It may be that one. We don't know. It's not that we don't know. All we had to prove was that one of the three co-defendants, when they entered the store, shot and killed the victim. That's true. Where did you prove that? Which one? Well, we don't need to say whether it was DeMonte Bolden or DeMario Bolden or Timothy Burton. Says who? What evidence do you have that any of the three shot the victim? When you look at all the evidence, including that from the police officers, Officer Rogers arrived on the scene shortly after the defendants were dropped off, he goes into the store and sees one of the defendants whom he recognized. Two of the co-defendants, remaining co-defendants, quickly exits the store, and when he tells them to stop, he sees both of them grab their sides and take off running. He gives chase. As Your Honor has already noted, he sees DeMario Bolden in possession of a gun, and that's corroborated by two other officers. Officer Jackson's recovered that. When did he see that co-defendant with the gun? When and where? As he was during the chase, as he was climbing over a fence. So he sees that, and he testifies candidly that he loses sight of DeMario Bolden for a second, but then at the same time, Officer Almanza, who was responding to the call, radio dispatch of help, sees DeMario Bolden pressed up against the side of a house,  And when you couple that evidence, in terms of spatial and temporal proximity, of all the things that happened in this case, the rational trier fact, the jury in this case, could have reasonably inferred, contrary to what the defense argued at the trial level, that it was one of the three that shot and killed the victim. Counsel, with all due respect, your brief here says, at page 11, Officer Rodgers, they grabbed their sides and began to run. Officer Rodgers saw that they both had guns. Where's that testimony? We read the record. There's no testimony from Officer Rodgers that he saw them with guns when they were leaving the store. Well, he did testify that, based on his experience as a police officer, when offenders grabbed their sides and ran. He believed they had guns. Right. He didn't see the guns. He did not see a gun out in open. The first time. How can somebody write a brief, an experienced state's attorney, and misrepresent to us that he says he saw the guns? He didn't see the guns. He saw a gun later. We can read the record, too. And two other officers saw a gun. We know that. It's not the gun that's the murder weapon. We know that, too. Well, it's not just that. You say in the brief, saw that they both had guns. I mean, the only evidence that there was in this case is that when Rio, I believe it was, was by the fence that there was a gun there, and it proved not to be the murder weapon. But right here, the brief, with no support from the record, says that Officer Rogers saw that they both had guns. Until Mr. Friedman, I think, exposed that in his reply brief and certainly called our attention, as he rightfully should. We agree. And to the extent that we may have taken some license in interpreting the brief, we apologize to the court. It just shows the paucity of evidence that you have here. Well, I would respectfully disagree. When you look at all of the evidence, including the defendant's videotape confession, all of the evidence that was presented via the police personnel, including the firearms expert, and notably he testified that the bullet that was recovered from the victim had the same class and characteristics as the .38 that was recovered from Rio. Be that as it may, when you look at all of the evidence, the totality of the evidence, and you look at it in the light most favorable to the prosecution, I think it is absolutely clear that a rational trier of fact could believe that defendant or one whose conduct he is legally responsible for caused the death of the victim. And that was during the commission of an underlying felony of attempt armed robbery. How do you get around, how do you explain the defense reliance on the Fagan case? I know you say that we're not duty-bound to follow Seventh Circuit cases, but Judge Posner clearly, in interpreting our law and 5-2 accountability, comes right out and says that it requires that the person aid, abet, or agree to aid the person who commits the actual crime. The person. We just don't have that here. Fagan is different, and I think it could be certainly distinguished from this case, as your honors have already noted. Justice Posner noted that we simply, or the state simply, did not prove who among the two, either Fagan or Dede, shot and killed the victim. On the contrary, what the evidence showed in that case was that the victim was killed by a .38 caliber pressed up against his back, a close-range shooting from the back, while Fagan was armed with a .22 caliber rifle and Dede was armed with a shotgun. So in that case, the defendant, Fagan, was prosecuted as a principal under an accountability theory, which we do not have in this case. So we, in that case, had to prove that he intended to kill the victim, but there was simply no evidence that he did so. He was not prosecuted as a principal. You're ignoring all the language of the Seventh Circuit dealing with accountability and 5-2. That's exactly what the rationale of their holding was, was that the state showed nothing more than the principal was a stranger to the common design, if there was a common design. I'm sorry, I misspoke. He was prosecuted strictly under an accountability theory and not under the felony murder rule. And as your Honor has already noted, that Seventh Circuit posited that it may have been a different case had the state proceeded under the felony murder theory. And here, because we proceeded under the felony murder theory, all we had to prove was that the defendant took substantial steps to promote or facilitate the commission of the offense. And we did that. When you look at the evidence, the defendant drove the co-defendants there, and contrary to what he may have said in the videotape confession, a lot of which were self-serving, I think the evidence gives rise to a reasonable inference that he did not, in fact, leave the scene right away. I think he stuck around long enough to hear a shot, see DeMonte Bolden. Now, where are you getting that from? Is that from the speculation brothers Rank and Idol? I mean, where's the evidence of that? He testified, or he stated in his confession, that he dropped them off, that he had a bad feeling in his gut, so he left. And according to him, he drove to his child's mother's house. But again, he got a different bad feeling, so he returned. I mean, if that's not something that's approaching a lie, I don't know what is. So a jury could reasonably infer that he stuck around long enough to see DeMonte Bolden bolt out of that store and drove him away. And not only that, he went back to Maria's house. And you have to keep in mind, Darlena Dextra testified that after the four persons left, with the defendant telling Darlena that I'm going to go handle some business, and when she asked, well, what business, he repeated the same thing and left. And she testified that both the defendant and DeMonte came back to the apartment 20 minutes later. And what did he do at that point? He asked Darlena to go to the Family Dollar store to see what's going on. And he himself later said that he went back there himself and saw the police and the ambulance. What does all that prove? That proves the accountability for the defendant. For the attempt on robbery, I agree with you. There's no problem there. Right. But we're talking about a murder here. We're talking about a felony murder and being accountable for that under common design. And you really have not answered that problem that we have in following through with where the proof is. It is our position that the reasonable inference to be drawn from all the evidence was that the three co-defendants, after being dropped off by the defendant, went inside the store, and one of the three shot and killed the victim. It's not a case where some other person who took this opportunity other than the three defendants seized upon this opportunity to shoot and kill the victim. When you look at all of the evidence, in the short span of time in which this happened, there could be no other conclusion that could be drawn as to who shot and killed the victim. Isn't it strange that you just argued that the defendant, you suppose, heard the gunfire and then saw Tay come running out and hooked up with him? There's just no proof in the record as to anybody else hearing that gunshot or gunshots if there was more than one. You've got a guy outside, a manager, who shrugs his shoulder and makes a nod toward the door for Officer Rogers, and he doesn't testify. We don't know what he heard. We don't know what anybody heard. But there's no evidence of a gunshot being fired at any time. What I'm arguing is the reasonable inference to be drawn from that. When somebody fires a gun, you presumably hear a gunshot. But you've got no evidence that somebody fired a gun at the time that all of these kids and the defendant was down there. Sure there is. You had the dead victim. How else could he have come up dead? I don't know. Am I supposed to prove that myself? Am I supposed to infer that that happened? No. Your Honor's job is to look at all of the evidence in the light most favorable to the prosecution and to see if they could have found the essential elements of the offense. And it is our position that we have done that. So we would ask this Court to look at all of the evidence, including, most importantly, the defendant's confession, and to draw reasonable inferences. Not unreasonable or improbable inferences, but reasonable inferences. And I think that gives rise to an inference that the defendant, or one for whose conduct he is legally responsible for, caused the death of the victim. And they did that during the commission of the underlying felon. The defendant mentions Church-Rillo, but that case is different because there we failed to prove that the principal, who actually got the gun when they broke into the house, we failed to prove that she was a convicted felon for the substantive charge of UUW by felony. You failed to prove the principal's guilt, right? In that case. We failed to prove the principal's guilt, which is what Mr. Friedman is arguing here, that you failed to prove any principal's guilt to hold Mr. Garrett responsible for. No. That is entirely different. What we had to prove was that the co-defendants killed the victim in this case during the commission of an attempt on robbery. And what we're saying is, yes, we don't have an eyeball witness that says, I saw one of the three shoot and kill the victim. But the reasonable inference, based on all of the evidence, gives rise to the fact that one of the three did, in fact, shoot and kill the victim. So that is entirely different than the case of us failing to prove an essential element of whether or not the person who possessed the gun in Church-Rillo was a convicted felon. It could be argued here that, you know, the whole problem we're confronted with stems from prosecutive decision here on how to try this case. The road would be a lot brighter for you if one of the co-defendants had testified here, obviously. That was a decision that somebody made. You had four that pled guilty and went along their way. Absolutely. There was plenty of evidence in those statements which never hit the courtroom that somehow found their way into the appellate record here. But none of that was heard by the jury. No. That gives us cold comfort as we contemplate what to do here. I absolutely agree. But we have to deal with the case as it is. The defendant would stand up here and argue to this court that there needs to be more evidence. He's basically asking for a perfect set of evidence, evidentiary facts, to sustain or affirm this defendant's conviction. It doesn't work that way in the real world, as your Honors know. For whatever reasons, we decided not to flip one of the co-defendants. But based on the record before this court, I believe, we believe, that the evidence is more than sufficient to meet our burden of proving defendant guilty beyond a reasonable doubt in this case. So for those reasons and the reasons stated in our brief, we would respectfully request that this honorable court affirm defendant's conviction for first-degree murder and the sentence imposed on that conviction. Thank you. Thank you. Thank you. Yes. Your Honor, the counsel of the state keeps referring to the self-serving confession of Mr. Garrett. They want him to withdraw the confession. I'd be happy to do so. I think we're not asking for a perfect case. We're asking the state prove its case beyond a reasonable doubt, which is Mr. Garrett's right in this case. The state did not do so. It appears that they're relying strictly on a train of circumstantial evidence. Well, if that's the case, no rational jury can conclude, as the jury in this case questioned, that Mr. Garrett is responsible under an accountability theory. This jury said who killed Marcel Hunt. The prosecution argument doesn't matter. They're doing the same thing today. They're engaging in flights of speculation, now new speculation we've never seen before, that Mr. Garrett stuck around and heard the gunshot, although police officers, none of them testified they heard a gunshot. If we're relying on circumstantial evidence, there's one important fact I wanted to relate that I failed to do. The gun, this gun that was found, was a revolver. The state wants to assume that's the gun that killed Mr. Garrett. There were three unfired cartridges in that weapon, no fired cartridges. A revolver does not eject cartridges, unless it could be shown that somehow Mr. Rio, in a minute or so, he was running away from the officers, dumped the unspent, the spent cartridges, not the fired cartridges, but the unfired cartridges. It would be unfired cartridges found in that gun, in the gun that didn't exist. But they weren't found. Additionally, the counsel for the state indicated that Officer Rogers saw three of the defendants in the store. I believe the testimonies that were two, Rio and Timothy Burton. There was a third man he saw that was never identified. And, Your Honor, given the state's burden, proof beyond a reasonable doubt, that third man, it's just as possible that he shot Marcel Hunt, as speculated by Judge Posner in Fagan, as Mr. Rio. Since we don't have a weapon, we don't have a bullet, there's no reason to believe that, any more reason to believe that Mr. Rio did it than this third man. And just one final response. The state indicates that all they have to prove is there was a criminal design and that Mr. Garrett's liable. I don't believe that's the law of felony murder. Felony murder specifically says a person commits first degree murder if informing the acts which caused the death. There must be causation, a link between the underlying felony and the death. And I'm citing People v. McCarty. I apologize, it's not in my brief. 264, Ill Decisions 148 from the First District. Felony murder depends solely on a cause and effect relationship between the crime committed and the resulting murder. There is no causation between the alleged armed robbery, which again I submit Mr. Garrett did not agree to under Accountability Theory and Armed Robbery, but be that as it may, as Your Honors have found, there's no causation, there's no link between that alleged armed robbery and the death of Marcel Hunt. So for those reasons, the reasons stated in our brief, we respectfully request that the judgment of conviction be reversed. Thank you, Your Honors. Thank you. The matter will be taken under advisement. Court will be adjourned. Thank you.